**1. OBSTRUCTING JUSTICE—EXECUTION OF AN ORDINANCE—STATUTES.**
Since, to execute an ordinance is to carry it into effect, to enforce its commands, therefore, officers attempting to prevent the use of a public park in violation of a city ordinance were engaged in the execution of an ordinance within the meaning of 3 Comp. Laws 1915, § 14994, making it an offense to resist any officer in the execution of any ordinance.[1]

**2. SAME—ORDER BY MAYOR "LAWFUL AUTHORITY."**
Since said statute makes it an offense to resist "any order" made by lawful authority, it is not limited to a court order, but includes an order of a mayor issued under authority of a city ordinance regulating the use of public parks.[2]

**3. CRIMINAL LAW—TRIAL—INSTRUCTIONS—APPEAL AND ERROR.**
Where, in a prosecution for resisting officers in the execution of an ordinance in violation of 3 Comp. Laws 1915, § 14994, under the undisputed evidence and the law applicable thereto, the trial court might properly have instructed the jury that it was their duty to return a verdict of guilty, error, if any, in the refusal of defendants' requests to charge was without prejudice.[3]

**4. OBSTRUCTING JUSTICE—USE OF PHYSICAL FORCE NOT NECESSARY ELEMENT OF OFFENSE.**
Where the execution of a city ordinance by police officers was successfully resisted, it was none the less an offense, under the statute, because accomplished without the use of physical force.[4]

Exceptions before judgment from Gratiot; Moinet (Edward J.), J.    Submitted June 17, 1926.    (Docket No. 125.)    Decided October 4, 1926.

Lewis King, George B. Garner, and R. C. Garner

---

[1]Obstructing Justice, 29 Cyc. p. 1328; [2]Id., 29 Cyc. p. 1328; [3]Criminal Law, 17 C. J. § 3706; [4]Obstructing Justice, 29 Cyc. p. 1329.

were convicted of resisting the execution of an ordinance.          Affirmed.

*George G. Hunter* and *Kelly S. Searl,* for appellants.

*Andrew B. Dougherty,* Attorney General, *O. L. Smith,* Assistant Attorney General, and *Romaine Clark,* Prosecuting Attorney, for the people.

McDONALD, J.          The defendants are traveling evangelists.          They were convicted of resisting the execution of an ordinance and the order of the mayor of Alma, Michigan.          The people's testimony tends to show that the defendants began holding religious meetings on July 13, 1925, in Wright Park, a city park in Alma, Michigan.          The park adjoins the Michigan Old People's Masonic Home and Hospital.          No formal permission was given by the city, but the meetings continued without objection until complaints came in of excessive noise and misuse of the park.          The city commission then decided to deny the use of the park to the defendants after Saturday, July 18, 1925, and left the matter to the mayor, the city manager, and the chief of police, who caused the defendants to be notified that the meetings must be discontinued after Saturday night.          Notwithstanding this notice, the defendants announced that meetings would be held as usual.          The defendant King spoke in defiance of the city authorities, told the people that they were not living in Rome, that the park belonged to them, and the mayor had no right to deny to them the use of it. By order of the mayor, the park was closed on Sunday, July 19, 1925.          The gates were roped off and the chief of police, with several regular policemen and special officers, were stationed at the park to prevent its use by the defendants.          Before the time announced for the meeting, the mayor went to the park and talked to the defendants.          He told them that they

could not use the park. Defendant King insisted that the mayor was wrong, and said that, notwithstanding his order, they would hold their meetings. Two of the defendants sought places of entrance not guarded by the police, and entered the park. They were ejected. They then addressed the people who had congregated in large numbers on the outside, and advised them to break down the fence and go into the park. The crowd followed this advice, and broke over into the park in spite of the efforts of the officers to restrain them. The meeting was held according to schedule. This prosecution followed.

The defendants denied many of the claims of the people though there is little dispute as to the material facts. They were convicted and have brought the case to this court on exceptions before sentence.

The errors assigned relate to the admission of evidence, to the refusal to give certain requests, and to the charge as given.

The prosecution was brought under section 14994, 3 Comp. Laws 1915, which provides:

"If any person shall knowingly and wilfully obstruct, resist, or oppose any sheriff, coroner, township treasurer, constable, or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or shall resist any officer in the execution of any ordinance, by-law, or any rule, order or resolution made, issued or passed by the common council of any city, board of trustees or common council or village council of any incorporated village or township board of any township, or shall assault, beat or wound any sheriff, coroner, township treasurer, constable, or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served or attempted to serve or execute the same, or shall so obstruct, resist, oppose, assault, beat, or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and

efforts to maintain, preserve, and keep the peace, every person so offending shall, on conviction thereof, be punished." * * *

The first question discussed in defendants' brief is presented by ten requests to charge, and in substance is, that the court should have held, as a matter of law, that there was no question for the jury, and should have directed a verdict of not guilty. In other words, it is the defendants' claim that there was no offense committed under the statute; that the order of the mayor was not such an order as is contemplated by the statute; that the officers were not engaged in the execution of an ordinance; and that, considering the testimony most favorable to the people's case, the defendants were guilty of nothing more than a violation of an ordinance.

The ordinance in question is known as ordinance No. 67, and is entitled:

"An ordinance to regulate the use of the public parks of the city of Alma, Michigan."

The applicable part reads as follows:

"No person shall deliver any oration, address, speech, sermon, or lecture therein unless he shall have first received permission from the common council of the city of Alma, or the mayor or other lawful authority so to do; nor shall any public meeting be held therein unless leave is first obtained."

The statute under which this prosecution is brought makes it an offense for any person to "resist any officer in the execution of an ordinance," etc. Counsel for the defendants insist that, at the time when the offense is alleged to have been committed, the officers were not engaged in the execution of an ordinance. They base this contention on a distinction which they seek to draw between the execution of an ordinance and an effort to prevent its breach. To execute an ordinance, within the meaning of the statute, is to

carry it into effect, to enforce its commands. The purpose of this ordinance is to regulate the use of public parks. One of the regulations is that such a park shall not be used for public meetings without permission. In issuing a permit or preventing the use of the park when a permit has been refused, the officers are carrying into effect the purpose of the ordinance. They are executing it. The contention of counsel is wholly without merit. At the time of the alleged offense the officers were engaged in the execution of an ordinance.

Equally without merit is the claim that the only order contemplated by the statute is a court order. The statute expressly states an "order made or issued by lawful authority." The ordinance authorizes the mayor to issue permits for the use of the park. It was his duty to enforce the ordinance. He could only do so by direction to the chief of police; and when he ordered the chief to prevent the defendants from using the park on the day in question, it was an "order issued by lawful authority." The court correctly overruled the defendants' contention that if there had been any offense committed, it was merely a violation of the ordinance and not of the statute.

The objections to the refusal of the court to submit certain requests to the jury and to the charge as given may be answered by saying that if there were any errors committed in respect to those matters, they were without prejudice to the defendants, because, under the undisputed evidence and the law applicable thereto, the court might properly have directed a verdict of guilty.

In determining what constitutes resistance to the execution of the ordinance, the conduct of the defendants must be viewed in connection with the attending conditions and circumstances. The officers had to deal not only with the defendants but with a more or

less excited crowd of several hundred people, most of whom were in sympathy with the defendants, and in respect to the holding of the meeting were under their absolute control. It was the crowd incited by the defendants that finally overcame the efforts of the officers to prevent the meeting. King and one of the other defendants were ejected from the park by two of the officers. King claimed that in doing so the officer tore his coat. He got up on a barrel near the fence and addressed the crowd for 15 or 20 minutes. He showed his torn coat. He attacked the mayor, and said that the people had a right to use the park, that it was a public place. He said that the mayor was not doing his duty, that he had a notion to appoint himself mayor and let the people into the park, and that if the mayor did not come and open it he, King, had a right to do so. The defendant George Garner testified:

"When King announced he would make himself mayor—declare himself mayor—words to that effect, it was a little loud; he stated the mayor had overstepped the mark, and he said, 'I have a notion to appoint myself as mayor and order the people to go in the park, go right in the park and we will hold the meeting.'"

Other witnesses for the defendants testified as follows:

"I saw King shortly after that standing up on something raised, talking to the people; the first thing I heard Mr. King say, he held up his right arm, and he had his coat sleeve nearly torn off. It was held a little at the top, and he was talking about the injustice of the officers. * * * I have never heard anyone that could stir up a crowd with regard to religion like King; he is the best talker I ever heard. He enthused me with his talk. I believed what he said and that was my spirit of mind when I went to the park on Sunday. I believed when I went to the park that I had a perfect right in the park on Sunday. Mr. King stood on a barrel and talked to the crowd fifteen

or twenty minutes, and he told the people that it was a public place and they had a right to enter and they did enter the park. * * * I heard most of the talk King gave for fifteen minutes in front of the park; I might have heard all but I didn't pay attention to all. * * *

"*Q.* You heard him say it was a public park, and he kept motioning to the crowd to go on in, and the crowd went on in when he motioned to them?

"*A.* Some of them did. There was a crowd in the park before King got through talking; about half the crowd, two hundred, was on the outside and that crowd went through after he got through talking."

Defendant George Garner also testified that he and the other defendants went to the park with a "fixed determination" to hold the meeting notwithstanding any opposition from the officers. He said:

"When we were evicted from the park we told them that we were going to have that meeting. The officers, including Campbell (the chief), were in uniform and he told us he was a police officer. I have had quite an experience with police officers and at that time I intended to hold that meeting after he told us not to. * * * We held the meeting. We intended to do first what we did, but not with any violence."

It is not necessary to make further reference to testimony given in behalf of the defendants. That which we have referred to shows that, knowing they had been forbidden to use the park, the defendants went there with a fixed determination to hold the meeting. They found the park closed. Two of them gained entrance, but were ejected by the police. They were warned by the police officers to keep out. Instead of yielding to the law they persuaded their followers, who were present in large numbers, to enter and take possession of the park. What they did is undisputed, but their contention seems to be that they are not guilty of resisting the execution of the ordinance, because they did not resort to physical

violence.    To constitute an offense under this statute,
it was not necessary that they should kick and fight
and bite their way into the park.    Their conduct under
the circumstances was just as effective in resisting
the officers as though they had used physical force.

If all of the testimony except that given by the
defendants and their witnesses had been eliminated
from the record, the jury would have been justified
in finding them guilty.    In view of this fact, we shall
not spend any time in discussing technical objections
to the proceedings of the trial.    In the verdict of
guilty there was no miscarriage of justice.

The judgment of conviction is affirmed.    The court
will proceed to sentence.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS,
WIEST, and CLARK, JJ., concurred.