PEOPLE v SMOCK

PEOPLE v GRISWOLD

PEOPLE v SORENSON

PEOPLE v PARSON

PEOPLE v SMITH

Docket No. 57669. Decided December 31, 1976. On application by the people for leave to appeal the Supreme Court, in lieu of leave to appeal, reversed the decision of the Court of Appeals and reinstated the convictions. Rehearing denied 400 Mich 951.

Robert H. Smock, Richard L. Griswold, Rodney R. Sorenson, Kenneth C. Parson, and Marvin P. Smith were convicted by a jury in Roscommon Circuit Court, Carl L. Horn, J., of arson. The Court of Appeals, Bronson and Kelley, JJ. (D. E. Holbrook, P. J., dissenting), reversed on the ground that there was insufficient evidence connecting them to the arson (Docket Nos. 20082–20086). The people apply for leave to appeal. *Held:*

The defendants were members of a car caravan of at least 40 persons which trespassed on a construction site and set fires and vandalized the site within 15 minutes. The speed and coordination with which this action was carried out could lead a jury to infer reasonably that members of this caravan acted in concert according to a preconceived plan, and with the common goal of destroying property by arson. There was also evidence from which a jury could infer reasonably that these defendants were voluntary members of the caravan and aware of its objective. By voluntarily choosing to join a group that was intent on committing the crime of arson, the defendants took action which supported, encouraged and incited its commission. The mere fact that a large number of persons was engaged in this undertaking cannot shield these defendants.

Reversed and the convictions reinstated.

Justice Williams, joined by Justice Levin, would grant leave to appeal because the case presents a jurisprudentially important question of first impression, namely, whether anyone can be convicted of aiding and abetting without showing that there was a principal perpetrator of the alleged illegal act. It appears

in this case, in which the jury was instructed on aiding and abetting, that the evidence did not show that a principal was indicated or shown to have set the fires. Case law strongly suggests that a case cannot be made against a defendant as an aider and abettor without showing there was a guilty principal.

63 Mich App 610; 234 NW2d 728 (1975) reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert A. Hess,* Prosecuting Attorney, for the people.

*David R. Sabin* for defendants.

PER CURIAM. A jury convicted these defendants of arson.[1] The Court of Appeals (Judge HOLBROOK dissenting) reversed the convictions on the ground that the evidence was insufficient to connect the defendants to the crime.[2] We disagree.

The record discloses that a caravan of 20 to 30 automobiles carrying a total of at least 40 persons forcibly trespassed upon a school construction site in Roscommon County. In the space of approximately 15 minutes, members of this caravan started six separate fires, slashed the fuel lines and punctured the fuel tanks of heavy construction vehicles, punctured fuel oil drums, started fuel oil heaters and aimed their flames at the tires of the construction vehicles, and burned the contents of construction office filing cabinets and desks. In addition, fuel oil was poured over stacks of lumber, and crumpled blueprint paper was stuffed underneath (matches were later discovered nearby). The caravan then quickly left the scene, splitting up and dispersing in opposite directions. On these facts, the jury could reasonably infer that the members of this caravan acted in concert

[1] MCLA 750.73; MSA 28.268, MCLA 750.74; MSA 28.269.

[2] *People v Smock,* 63 Mich App 610; 234 NW2d 728 (1975).

according to a preconceived plan that had arson as its primary objective.

All five of these defendants were apprehended at the scene. Witnesses identified Smock, Griswold, Sorenson and Parson as the occupants of a blue Plymouth station wagon that was near the head of the caravan as it approached the construction site. As the caravan reached the site, this station wagon pulled in front of a car full of construction employees who were attempting to leave, and prevented them from moving. Smock and others then got out and stood around the employees' car. Later, Smock returned to the station wagon and rode into the site itself with Parson, Griswold and Sorenson. Griswold's fingerprints were discovered on a beer can found inside the site near some buildings that had been burned and some telephone wires that had been cut. Parson and Sorenson smelled of fuel oil when they were booked by the police. Smith was identified as the driver of a beige Chrysler which was also near the head of the caravan as it approached the construction site. He got out of his car, forcibly prevented an employee from locking a cable that would have barred entrance to the site and then directed the caravan around the Plymouth station wagon and the employees' car and into the construction site. On these facts, the jury could reasonably infer that each of these defendants were voluntary members of the caravan and were aware of its objective.

In the circumstances of this case, nothing more is necessary to "connect" these defendants to the crime.[3] By voluntarily choosing to join a group that was intent on committing the crime of arson, these defendants *took action* which supported, encouraged and incited its commission. By so joining,

---

[3] *See* MCLA 750.71; MSA 28.266.

they contributed to the psychological underpin-
nings that give strength to a "mob" through the
device of mutual reassurance. They also contrib-
uted to the effect of a mob on those who oppose it.
In this case, the few employees who were present
when the caravan arrived indicated that they felt
helpless in the face of so large a group. As we said
in *People v Palmer,* 392 Mich 370, 378; 220 NW2d
393 (1974):

"The amount of advice, aid or encouragement is not
material if it had the effect of inducing the commission
of the crime."

The jury in this case could conclude that the
conduct and actions of each of these defendants
had the "effect of inducing the commission of the
crime".

This is not a case of "guilt by association" or
"mere presence at the scene". These defendants
chose to cast their lot with others who were bent
on arson and by doing so they lent active support
to the criminal enterprise. The mere fact that a
large number of people was involved in this under-
taking cannot shield these defendants. As stated
by Judge HOLBROOK in his dissent, "If the theory
of the majority were true, then criminals could
truly find safety in numbers".[4]

The jurors in this case believed the evidence
presented and determined that these defendants
were guilty as charged. That was their right, and
we reaffirm it today.[5]

In lieu of leave to appeal, pursuant to GCR 1963,
853.2(4), we reverse the Court of Appeals and
reinstate the defendants' convictions.

[4] *People v Smock, supra,* 627.
[5] *See People v Fuller,* 395 Mich 451; 236 NW2d 58 (1975).

Kavanagh, C. J., and Coleman, Fitzgerald, Lindemer, and Ryan, JJ., concurred.

Williams, J. *(to grant leave).* This arson case presents a jurisprudentially important question of first impression, and we would grant leave.

The trial judge gave an instruction on aiding and abetting over the objection of defense counsel that there was "no evidence from which this jury could conclude that these gentlemen were aiders and abettors". While not directly referring to this instruction, the majority of the Court of Appeals agreed with defense counsel that there was no evidence connecting defendants to arson. The dissenter was more specific stating defendants could be guilty without setting the fires. He argued that they could be convicted as aiders and abettors, because, since there was no doubt an arson was committed, "there must somewhere be a guilty principal".

The issue then is whether under the definition of "burn" in the arson statute there can be an aider and abettor without showing there was a principal. The pertinent statutory language is:

"The term 'burn' as used in this chapter shall mean setting fire to, or doing any act which results in the starting of a fire, or *aiding, counseling, inducing, persuading or procuring another to do such act or acts.*" (Emphasis added.) MCLA 750.71; MSA 28.266.

The significant language is "aiding, counseling, inducing, persuading or procuring *another to do such act or acts".* Is it possible to make sense of any of the verb forms "aiding, counseling, inducing, persuading or procuring" without adding *"another to do such act or acts"?* In short, would a proper legal instruction have to refer to "aiding etc. *another to do such act or acts"?*

In addition to the question of statutory construction, Michigan case law strongly suggests that a case cannot be made against a defendant as an aider and abettor without showing there was a guilty principal. See, for example, *People v Laine,* 31 Mich App 271, 272–273; 187 NW2d 505 (1971): Although *"conviction* of the principal is no longer necessary to charge the accessory, the *guilt* of the principal must be shown"; *People v Parks,* 57 Mich App 738, 744; 226 NW2d 710 (1975): "The prosecution was required to prove the existence and guilt of a principal other than the defendant in order to establish the propriety of the charge on aiding and abetting"; *People v Tunnacliff,* 375 Mich 298, 301; 134 NW2d 682 (1965): "[I]t was the burden of the state to prove the commission of the crime by Mahar [alleged principal] before Tunnacliff could be convicted of aiding in the commission thereof". But see *People v Smith,* 271 Mich 553, 561; 260 NW 911 (1935); *People v Mangiapane,* 219 Mich 62, 66; 188 NW 401 (1922).

Since it appears that the evidence did not show that a principal was indicated or shown to have set the fires and since it appears that it is an important question of law whether any one can be convicted of aiding and abetting without showing that there was a principal perpetrator of the alleged illegal act, we believe that leave should have been granted in this case.

LEVIN, J., concurred with WILLIAMS, J.