# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTONIO MAURICE LACEY,

Defendant-Appellant.

UNPUBLISHED
March 10, 2015

No. 317964
Wayne Circuit Court
LC No. 13-002469-FC

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of armed robbery, MCL 750.529, carjacking, MCL 750.529a, conspiracy, MCL 750.157a, resisting or obstructing a police officer causing serious impairment, MCL 750.81d(3), resisting or obstructing a police officer causing injury, MCL 750.81d(2), nine counts of resisting or obstructing a police officer, MCL 750.81d(1), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (second offense), MCL 750.227b. We affirm.

Defendant's convictions arise from a series of crimes that occurred on an evening in February 2013. Earlier that month, defendant's accomplice, Deleton Warren, committed an armed robbery and carjacking of a couple during which he stole a four-door black Ford Fusion. Thereafter, the Ford Fusion was used in a series of offenses in which the vehicle was equipped with a flashing light and used to stop other vehicles under the pretext of a police stop. During these stops, the occupants of the other vehicles were threatened at gunpoint and robbed. The Detroit police became aware of a series of robberies in a particular area and requested the assistance of the Michigan State Police.

On February 10, 2013, Allen Willis drove his friend's white conversion van to a club. After the club closed, Willis noticed a black Ford Fusion in the parking lot as he walked to his vehicle. Before he could enter his vehicle, a man came up behind him, put an object in the center of his back, and announced a robbery. Although the robber had a mask covering the area below his nose, Willis identified defendant as the robber. Willis gave defendant his glasses, wallet, and necklace, and as he was unscrewing his diamond stud earrings, another man approached, who Willis identified as Warren. The men took the van and told Willis to walk down the street and not turn around. As Willis walked to a nearby restaurant to report the carjacking, he saw his white van stopped at a traffic signal and the black Fusion was behind the van.

-1-

State troopers later spotted the van and began to follow it. Before a traffic stop could be executed, the van stopped in the middle of an intersection and two occupants exited the vehicle and fled on foot. The state troopers gave chase, but the van's occupants managed to elude the police. A K-9 unit was called to the scene, but was unable to track the occupants. Consequently, state troopers and Detroit police officers established a perimeter in the area and broke off into teams to search nearby abandoned homes.

State troopers entered a home at 5339 Townsend and identified themselves, but received no response. When troopers Jack Taeff and Craig MacDonald climbed the stairs to the second floor and announced their presence, Trooper Taeff was struck by a gunshot in his left leg. There was an exchange of gunfire. The sound of gunfire caused additional state troopers and Detroit police to converge on the home. Another trooper yelled out that the police were present, were not going to leave, and for the shooter to give up. A commotion could be heard from above. Detroit Police Officer Aaron Haley heard the barrage of gunfire and ran into the home to the top of the stairs. Officer Haley planned to meet Trooper Taeff to remove him from the home, but more shots were fired. Officer Haley began to back up and return fire in the direction of the muzzle fire, and he felt a sharp pain in his left lower back.[1] Officer Haley retreated down the steps to reload his weapon. There, Officer Haley heard another exchange of gunfire with codefendant Warren, followed by officers outside the home yelling at a man in dark clothing on the roof. Officers who had established a perimeter around the home observed defendant on the roof. He jumped or fell from the roof and was secured by officers. On the second floor, Warren agreed to surrender, but before he could be arrested, Warren refused to show his hands to law enforcement officers.

In his own defense, defendant testified that he agreed to "go scrapping" with Warren, which involved taking scrap metals from abandoned homes. According to defendant, Warren asked defendant to meet him at the Townsend address to remove an antenna from the roof. Defendant testified that he received a ride to that address, but denied seeing or crossing a police perimeter to enter the area. He claimed that he was on the roof for approximately 10 minutes when he heard the sound of a door crashing and heard a barrage of gunshots, but he could not hear voices because of the wind in his ears. After lights were shined on him, and he was commanded to come down from the roof, he slipped on ice and hit the ground where he was struck with the butt of a gun multiple times by the police. Defendant denied that he left or touched any gun in the abandoned home, or that he took anyone's money or jewelry. He denied committing any crimes since 1994, denied ever being in Warren's Ford Fusion, and denied that he helped Warren resist arrest.

Defendant first argues that there was insufficient evidence to support his convictions for resisting or obstructing a law enforcement officer, either as a direct principal or an aider or abettor. We disagree.

---

[1] After the arrests, Officer Haley spoke to his superior about the discharge of his weapon and whether he was injured in the shootout. Officer Haley was wearing a body armor shirt, his vest, and a fleece shirt, and a hole was found in the fleece shirt in the area he experienced pain.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). In examining a sufficiency challenge, the evidence is reviewed in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Any conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of the crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). An appellate court will not interfere with the jury's assessment of the weight of evidence and the credibility of witnesses. *Dunigan*, 299 Mich App at 582. It is up to the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences. *Malone*, 287 Mich App at 654.

The prosecutor argued at trial that defendant was guilty either as a direct principal or an aider or abettor. The aiding and abetting statute, MCL 767.39, provides that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." "The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.'" *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999). However, a defendant's mere presence at a crime, even with knowledge that an offense is about to be committed, is not enough to make him an aider and abettor. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). Some aid or assistance by the defendant is required, but the degree of advice, aid, or encouragement is immaterial as long as it induced the commission of the crime. *People v Smock*, 399 Mich 282, 285; 249 NW2d 59 (1976). Thus, an individual who fails to commit the actual offense, but lends active support to the criminal enterprise does not reflect mere presence at the scene. *Id*.

To support a conviction for resisting or obstructing a police officer pursuant to MCL 750.81d, the prosecutor must demonstrate: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014); *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). Physical obstruction of an officer is unnecessary, hindering an officer in the conduct of a criminal investigation is sufficient. *People Pohl*, 207 Mich App 332, 333; 523 NW2d 634 (1994). Prearrest flight that actively interferes with an investigation is sufficient, particularly where the defendant knew he was fleeing from the scene of a crime. *Id*. Physical contact or violence with the police is unnecessary, and the failure to abide by police warnings or orders is just as effective in resisting officers as if physical force was used. *People v King*, 236 Mich 405, 411-412; 210 NW 235 (1926).

Defendant argues that the evidence was insufficient to establish his personal culpability for any of the resisting or obstructing offenses because he was merely present at the scene, did not aid or assist Warren, and his entry onto the roof shows that he was trying to flee from Warren, not aid or abet him in his efforts to resist or obstruct the police. But defendant's argument is premised on the jury accepting as true his own trial testimony. Specifically, the jury would have had to give credence to defendant's testimony that he agreed to engage in "scrapping" with Warren at 4:00 a.m. at the Townsend abandoned home, and that his car broke down, so he was given a ride by another person without detecting the established police perimeter. The jury would also have had to believe defendant's testimony that he was present on the roof trying to remove an antenna when the police entered the abandoned home, and that he heard no police commands to identify himself or come forward while present on the roof.

When examining a challenge to the sufficiency of the evidence, this Court is required to review the evidence in a light most favorable to the prosecution. *Dunigan*, 299 Mich App at 582. Any conflicts in the evidence must be resolved in favor of the prosecution. *Bennett*, 290 Mich App at 472. In contrast to defendant's testimony, Willis testified that he was robbed and carjacked by two men earlier that night after leaving a club. Willis identified defendant as one of the robbers. After Michigan State Police Troopers learned of the carjacking, they spotted Willis's van and began to follow it. Before they could stop it, the vehicle stopped in the middle of an intersection and the two occupants took off running in different directions. The troopers lost sight of the robbers, but the police established a perimeter in the area and began searching abandoned homes. After entering the home at 5339 Townsend Street, the officers announced their police presence and advised the occupants to identify themselves. The officers heard movement, but no one responded to the officers' commands. Defendant was spotted on the roof and fell to the ground where he was apprehended.

Although defendant contends that he arrived at the abandoned home at 4:00 a.m., the testimony of Willis and other witnesses indicated that defendant was part of a crime spree involving the impersonation of police officers to rob vehicle occupants of their belongings. Willis identified defendant as one of his robbers. Although defendant asserted that was trying to get away from Warren, the police observed the two occupants from the white van run in separate directions, but they were discovered together at the abandoned Townsend home. When the police arrived at the home and announced their presence, they heard noises above them, but the two occupants, Warren and defendant, both ignored police requests to identify themselves. Ultimately defendant was observed on the roof and jumped or fell to the concrete.

Viewed in the light most favorable to the prosecution, the evidence allowed the jury to find beyond a reasonable doubt that defendant was acting in concert with Warren to resist their detection and apprehension by the police, that defendant knowingly failed to comply with the officers' directives to identify himself, and that defendant chose to climb to the roof of the home in an attempt to escape from the police. It is immaterial whether defendant or Warren committed each specific act that served as the factual basis for each resisting or obstructing conviction. The jury could reasonably find that defendant's willing participation and active involvement with Warren induced Warren's acts of resistance, including shooting at the officers. The jury could find that defendant's failure to identify himself or to reveal Warren's location to the officers upon their request supported an inference that he intended to aid and abet Warren, and knew from their joint criminal activities that Warren was willing to fire his weapon. Thus, defendant

properly could be convicted of resisting or obstructing a police officer, either as a principal for his knowing failure to comply with lawful police commands, or as an aider and abettor to Warren. See *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995), overruled on other grounds *People v Mass*, 464 Mich 615; 628 NW2d 540 (2001).

Further, factual issues concerning the purpose of defendant's presence at the Townsend home, whether defendant was fleeing from Warren or the police, and whether defendant knowingly aided and abetted Warren's resistance were all questions of fact for the jury to resolve in light of the evidence. See *Smock*, 399 Mich at 285. The evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant was not merely present at the home, and was guilty of each of the resisting or obstructing charges, whether as a direct principal or an aider and abettor.

Defendant next argues that he was deprived of a fair trial because of improper questioning and comments by the prosecutor. We disagree.

Questions of prosecutorial misconduct are decided on a case-by-case basis, and the prosecutor's conduct must be evaluated in context. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). In this case, defendant did not object to the prosecutor's conduct at trial; thus, this unpreserved issue is reviewed for plain error affecting substantial rights. See *id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v McCuller*, 479 Mich 672, 695; 739 NW2d 563 (2007) (further citation and punctuation omitted). Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's improper argument. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

Defendant argues that it was improper for the prosecutor to ask him why he did not tell treating physicians that he was beaten by the police, and whether the doctors were also trying to convict him. Defendant also argues that it was improper for the prosecutor to state that he was trying to help defendant keep his lies straight, and to ask him whether other witnesses and the police were lying. Generally, it is not improper for a prosecutor to suggest that a defendant is lying or to express a belief in the defendant's guilt when the remarks are related to and supported by the evidence. *People v Cowell*, 44 Mich App 623, 628-629; 205 NW2d 600 (1973). But it is improper for the prosecutor to ask a defendant to comment on the credibility of the prosecution's witnesses because the defendant's opinion of their credibility is not relevant. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). However, when the defendant is not harmed by the questioning, or defense counsel fails to timely object and a curative instruction could have cured any prejudice, he is not entitled to appellate relief. *Id*. at 17-18.

With regard to the prosecutor's statements that defendant was lying, that the prosecutor was trying to help defendant straighten out his story, and that defendant was suggesting his doctors were in on the "scam," there is no indication that defendant was harmed by the questioning, and an instruction could have remedied any perceived prejudice. See *Buckey*, 424 Mich at 17-18; *Johnigan*, 265 Mich App at 467. The prosecutor's statements challenged defendant's testimony in light of inconsistencies between that testimony and other evidence. For example, defendant testified that he was physically injured when the police struck him with the

butt of a gun after he came off the roof, but medical records did not reflect that defendant reported any injury caused by law enforcement. Although defendant minimized his relationship and contact with Warren, Warren's residence, and Warren's Fusion, the prosecutor questioned defendant's testimony in light of witness testimony linking the two to other criminal conduct. Defendant also contended that he merely met Warren at the Townsend address to engage in scrapping, but he denied passing a police perimeter that had been established, and eyewitnesses identified defendant as the perpetrator of a string of robberies that evening. It was not improper for the prosecutor to point out discrepancies between defendant's testimony and other evidence in the case, and the prosecutor was not limited to using only the blandest possible terms when questioning defendant. See *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

And even if it was improper for the prosecutor to ask defendant whether other witnesses were lying, the jury was aware from the prosecutor's questioning that the prosecutor did not believe defendant's testimony because of the conflicts with other evidence and testimony. We note that defense counsel acknowledged the conflicting testimony, and challenged the veracity of the prosecution's witnesses. In his closing argument, defense counsel expressly referred to Officer Lavon Howell as a liar, questioned the accuracy of the medical records and whether a cover up occurred, and argued that the police would lie to cover up something they had done wrong. The statements and arguments by both parties reflected their contrasting theories of the case and acknowledgment that testimony presented by each side was adverse to the other. Moreover, a timely objection could have cured any perceived prejudice resulting from the prosecutor's questions and comments. Indeed, even without an objection, the trial court instructed the jury that the lawyer's statements, questions, and arguments were not evidence, and that it was the jury's job to decide the facts of the case and to decide which witnesses to believe. These instructions were sufficient to protect defendant's substantial rights. Accordingly, defendant is not entitled to appellate relief.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood