*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TYWANTIST DONTE POTTER,

       Defendant-Appellant.

UNPUBLISHED
May 20, 2021

Nos. 350991; 350992; 350993
Washtenaw Circuit Court
LC Nos. 18-000884-FH; 18-
       000909-FH; 18-001014-
       FH

Before: SHAPIRO, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant of four counts of resisting arrest in violation of MCL 750.81d(1). Defendant appeals as of right. We affirm.

## I. BACKGROUND

Defendant was charged with a total of four counts of resisting arrest arising from incidents at (1) the Ann Arbor Public Library on February 2, 2018, (2) a Starbucks restaurant on February 28, 2018, and (3) the campus of the Eastern Michigan University on August 19, 2018. There were three lower court cases filed in connection with these events. Over defendant's objections, the cases were joined and tried together. The prosecution's evidence consisted of testimony from various police officers, as well as surveillance video from the library and footage from body-cams worn by the police officers. This evidence showed that, during his interactions with police, defendant engaged in multiple acts of resisting and obstructing officers in the lawful performance of their duties, including physically pulling away from police, spitting on the officers, refusing to comply with lawful commands, and, in one instance, attempting to bite an officer. In addition to the evidence relating to the charges at issue in this case, the prosecutor offered other-acts evidence involving an incident in 2016. In 2016, during his arrest at the library, defendant pulled away from arresting officer, moved or kicked his leg in an effort to resist the officer's attempts to search him, and ultimately spat at the officer. The jury convicted defendant as charged.

-1-

## II. JOINDER

Defendant argues that the trial court erred by joining three unrelated cases that involved, at most, a series of similar spontaneous acts rather than a series of acts constituting part of a single plan or scheme. According to defendant, he was prejudiced by this joinder and he is entitled to new, separate trials. We disagree. In our view, even assuming the trial court's joinder decision was erroneous, defendant is not entitled to relief because the evidence from each case would have been admissible as other-acts evidence at separate trials under MRE 404(b).[1]

MCR 6.120(B) authorizes a trial court to "join offenses charged in two or more informations or indictments against a single defendant" where it is "appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." "Joinder is appropriate if the offenses are related," and, relevant to this appeal, offenses are considered related if they are based on "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1)(c).

In this case, the trial court permitted joinder on the basis that defendant's offenses committed against different police officers on different dates constituted parts of a plan or scheme within the meaning of MCR 6.120(B)(1)(c). For purposes of this rule, "multiple offenses may be 'related' as part of a single scheme or plan despite a lack of temporal proximity." *People v Williams*, 483 Mich 226, 241 n 18; 769 NW2d 605 (2009). Likewise, offenses may be related as part of a scheme or plan even if they involve separate crimes against different victims. See *id*. at 248-249 (compiling examples of joinder in cases involving separate offenses and multiple victims). But "[o]ffenses committed at different times and places are not related merely because they are of the same or similar character," *id*. at 235 n 8 (quotation marks and citation omitted), and offenses merely involving "the same or similar character" may not be joined under MCR 6.120, *id*. at 246.

Defendant acknowledge that his charged offenses shared a similar character, but he argues that the events occurring on separate days, at separate locations, and involving separate police officers cannot be considered parts of a common plan or scheme. During its joinder analysis, the

---

[1] We set forth the applicable standards of review in *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014):

> Whether joinder is appropriate is a mixed question of fact and law. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute related offenses for which joinder is appropriate. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. However, the ultimate decision on permissive joinder of related charges lies firmly within the discretion of trial courts. [Quotation marks and citations omitted.]

"[A] preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009).

trial court acknowledged that this is not a case in which defendant's separate acts could be considered pieces of a single scheme or parts of one larger plan. See *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). Instead, the trial court appeared to treat defendant's conduct as evincing the repeated use of a common plan to commit separate crimes. See *id*. at 63-64. According to defendant, this conclusion was erroneous because "[t]o establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than *a series of similar spontaneous acts . . . .*" *Id*. at 65-66 (quotation marks and citation omitted) (emphasis added). Defendant asserts that there is simply no indication that he had a plan or scheme to confront and spit at police; rather, the common features of defendant's conduct evince, at most, spontaneous—albeit similar—acts of resistance by defendant after police initiated contact with him.

However, even if we agreed with defendant's position, he would not be entitled to relief on appeal because any error was not outcome determinative given that the offenses would be admissible as other-acts evidence in separate trials. Misjoinder may be deemed harmless when "all or substantially all of the evidence of one offense would be admissible in a separate trial of the other." See *Williams*, 483 Mich at 244 (quotation marks and citation omitted). In other words, joinder of "other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *Id*. at 237 (quotation marks and citation omitted).

As an alternative to joinder in this case, the prosecutor moved for admission of the respective offenses as other-acts evidence in separate trials. Other-acts evidence is governed by MRE 404(b), which states in part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if the following circumstances are met:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

In analyzing the joinder question in this case, the trial court also addressed the prosecutor's motion under MRE 404(b), concluding that the evidence would be admissible in separate trials to establish the absence of mistake or a common plan or scheme. Defendant argues that if the different incidents do not establish a common plan or scheme then it also follows that the evidence is not admissible under MRE 404(b). This argument, however, ignores the "many bases on which MRE 404(b) permits evidence of other crimes." *Williams*, 483 Mich at 244 n 26. Even if the

evidence could not be used to establish a common plan, the trial court concluded that the evidence underlying the joined offenses would also be admissible to establish the absence of mistake. We agree.

Defendant's repeated acts of spitting at police officers perhaps most clearly demonstrate the relevance and admissibility of the three incidents as other-acts evidence in separate trials. At the hearing on the admission of the evidence, the prosecutor argued that the similar incidents, including defendant's acts of spitting, were relevant to show that defendant's conduct was intentional and not a mistake. At trial, defense counsel questioned the officers about whether defendant could have inadvertently spat on them while he was talking in a heated manner or because he was coughing. Although inadvertent spittle while talking or coughing is certainly possible, the idea that defendant's conduct was inadvertent becomes significantly less probable when considering that on three separate occasions defendant spat directly in the faces of three police officers, hitting two of them in the eye with spit. See *People v Mardlin*, 487 Mich 609, 625; 790 NW2d 607 (2010) ("[T]he very function of the doctrine of chances is to permit the introduction of events that might appear accidental in isolation, but that suggest human design when viewed in aggregate."). More generally, defense counsel argued that defendant had no intent to assault, to batter, to resist, to obstruct, or to hurt police, but that he was instead "not bothering anybody" and simply "living his life." Regarding the library incident in particular, the defense also suggested that defendant had been "startled awake" and "didn't know what was going on." And defense counsel asserted that, at times, defendant in fact tried to cooperate with police, but he was just not moving fast enough for their liking. According to the defense, it was the police, not defendant, who took things to "the next level." And yet, during the incident in August 2018, defendant chased down a police car to throw a bucket at it.

In this context, defendant's mens rea was clearly at issue. See *People v Crawford*, 458 Mich 376, 393; 582 NW2d 785 (1998) ("[T]he more often the defendant commits an actus reus, the less is the likelihood that the defendant acted accidentally or innocently.") (quotation marks and citation omitted). Accordingly, given the questions related to whether the spitting was intentional, as well as the suggestions that defendant was uncertain about "what was going on" or that his attempts to simply live his life were being mistakenly perceived as resistance, his pattern of repeated physical resistance, spitting, and verbal abuse were relevant to establishing that he did not act accidently or innocently but with the intent to resist.

Even if relevant under MRE 404(b), otherwise admissible evidence may be excluded under MRE 403 when the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Defendant suggests that there was a risk of jury confusion in this case because the evidence relating to the three incidents was similar. However, the evidence presented was not complex, and there was little risk of confusion. See *People v Gaines*, 306 Mich App 289, 305; 856 NW2d 222 (2014). Moreover, contrary to defendant's arguments, the high degree of similarity between the incidents actually increases the evidence's probative value. And the evidence had much more than "negligible" probative value, particularly given the difficulty in proving defendant's state of mind and the fact that defendant's mens rea was at issue. See *People v Nasir*, 255 Mich App 38, 45; 662 NW2d 29 (2003) ("Proving an actor's state of mind is difficult in virtually all criminal prosecutions."). Further, while prejudicial, the evidence did not inject any extraneous considerations, and the probative value of

the evidence was not outweighed by the risk of *unfair* prejudice. See *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). Considering the evidence's probative value, MRE 403 would not warrant exclusion of the evidence.

In sum, even if the trial court erred by joining the cases under MRE 6.120, defendant has not shown outcome determinative error because the other incidents would have been introduced as other-acts evidence under MRE 404(b) in separate trials. Defendant is not entitled to relief on appeal.

## III. EVIDENCE OF THE 2016 INCIDENT

Defendant next argues that the trial court erred by admitting evidence of the 2016 incident as other-acts evidence. For the reasons the evidence underlying the current charges would be admissible as other-acts evidence at separate trials, we likewise conclude that the trial court did not abuse its discretion by admitting evidence of the 2016 incident under MRE 404(b) to establish the absence of mistake. Similar to the other incidents, the 2016 incident also involved defendant's acts of resistance against police including specifically spitting at an arresting officer. In fact, during the 2016 incident, defendant had to turn to spit over his shoulder at the officer, belying any suggestion of unintentional spitting.[2] We note also the trial court endeavored to minimize the prejudice from the 2016 other-acts evidence by giving a limiting instruction on the use of this evidence at trial. See *Sabin (After Remand)*, 463 Mich at 55-56. The trial court's admission of this other-acts evidence was not erroneous.

## IV. DUE PROCESS AND UNANIMITY

Finally, defendant argues that, absent a specific unanimity instruction, MCL 750.81d(1) is unconstitutional because it provides alternate means for violating the statute that are so disparate as to constitute separate offenses and, as applied to defendant, the statute is unconstitutional because the prosecution offered a variety of proofs—rather than a single, coherent theory—to establish various ways in which defendant violated the statute.[3]

### A. DUE PROCESS AND MULTITHEORY STATUTES UNDER *SCHAD*

"A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *In re Forfeiture of 2000 GMC Denali and Contents*, 316 Mich App 562, 569; 892 NW2d 388 (2016). Defendant first argues that MCL 750.81d(1) is facially invalid. "A facial challenge attacks the statute itself, and requires the challenger to establish that no set of circumstances exists under which the act would be valid." *People v Johnson*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351308); slip op

---

[2] In the context of an MRE 403 argument, defendant also asserts that the 2016 incident involved unnecessarily duplicative evidence. It did not. The 2016 incident involved separate events than those underlying the charges in this case, and the testimony of one officer describing these events was not duplicative or cumulative.

[3] Defendant did not make these arguments before the trial court, and so his claims are unpreserved and reviewed for plain error. See *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007)

at 2 (quotation marks and citations omitted). "The party challenging the constitutionality of a statute bears the burden of proving its invalidity." *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002).

"[I]t is well settled that when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998), citing *People v Johnson*, 187 Mich App 621, 629-630; 468 NW2d 307 (1991). The issue then is whether a statute creates separate and distinct offenses or merely identifies alternate means of committing a single offense. This requires examination of "the extent to which a statute could constitutionally define alternative means of committing a single criminal offense." See *People v Cooks*, 446 Mich 503, 514-515 & n 16; 521 NW2d 275 (1994).

To make this determination, defendant asks that we follow the United States Supreme Court's plurality decision in *Schad v Arizona*, 501 US 624; 111 S Ct 2491; 115 L Ed 2d 555 (1991) (opinion by SOUTER, J.).[4] In that case, the defendant was convicted of first-degree murder after the prosecutor presented alternative theories to the jury of both first-degree premeditated murder and felony murder committed in the course of the robbery. *Id.* at 629. The Court was not concerned about a jury returning a general verdict "predicated on the possibility of combining findings" as to the defendant's mental state. *Id.* 632. However, the Court recognized that the Due Process Clause restrains a state's authority to define conduct as mere alternative means rather than separate offenses, and the Court sought to determine "the point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses." *Id.* at 632-633. The Court concluded that there was no "single criterion" that could resolve the issue and instead that the "appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness, and for the rationality that is an essential component of that fairness." *Id.* at 637. The Court further explained:

> In translating these demands for fairness and rationality into concrete judgments about the adequacy of legislative determinations, we look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the *mens rea* element of a single offense. The enquiry is undertaken with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime. [*Id.* at 637-638 (citation omitted).]

Applying this approach to the facts of that case, the Court determined that the statute at issue set forth alternate means rather than separate offenses. The Court considered the historical underpinnings for the state statute as well as comparisons in other jurisdictions, which largely supported the conclusion that premediated and felony murder could be treated as mere alternative

---

[4] "A plurality opinion of the United States Supreme Court . . . is not binding precedent." *People v Beasley*, 239 Mich App 548, 559; 609 NW2d 581 (2000).

means rather than separate offenses. *Id*. at 640-643. The Court then considered the different mental states at issue and whether there was a moral disparity between the two, explaining that if

> two mental states are supposed to be equivalent means to satisfy the *mens rea* element of a single offense, they must reasonably reflect notions of equivalent blameworthiness or culpability, whereas a difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses altogether. [*Id*. at 643.]

As applied in the context of the murder statute, the Court reasoned:

> Whether or not everyone would agree that the mental state that precipitates death in the course of robbery is the moral equivalent of premeditation, it is clear that such equivalence could reasonably be found, which is enough to rule out the argument that this moral disparity bars treating them as alternative means to satisfy the mental element of a single offense. [*Id*. at 644.]

For all these reasons, the Court concluded that "the jury's options in this case did not fall beyond the constitutional bounds of fundamental fairness and rationality." *Id*.

Turning to the facts of this case, relying on *Schad*, defendant challenges the constitutionality of MCL 750.81d(1), which states:

> [A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

In view of the different conduct violative of MCL 750.81d(1), defendant contends that the Legislature has unconstitutionally combined distinct offenses, encompassing a wide variety of violent and nonviolent behavior, into a single statute. According to defendant, the alternate methods also reflect different notions of blameworthiness or culpability as discussed in *Schad*, and it would be violative of defendant's right to jury unanimity to allow defendant's conviction to stand without a unanimous verdict regarding the method by which defendant violated the statute.

In arguing that MCL 750.81d(1) is comprised of separate and distinct offenses, defendant relies heavily on *United States v Mosley*, 575 F3d 603 (CA 6, 2009). In that case, the Sixth Circuit held that, for purposes of federal sentencing guidelines, obstruction (specifically in the form of a knowing failure to follow a lawful command, MCL 750.81d(7)(a)), constituted a "distinct offense" from the violent means of violating MCL 750.81d and so the sentencing guideline pertaining to a prior "crime of violence"[5] was improperly scored for the defendant's prior resisting and

---

[5] The sentencing guideline at issue asked whether defendant had committed a "crime of violence," which was defined as a felony that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2)(a) is burglary of a dwelling, arson, or extortion, involves use of explosives or (b) otherwise involves conduct that presents a serious

obstruction conviction. *Id*. at 605-608. Defendant argues that *Mosley* establishes that MCL 750.81d(1) contains separate and distinct offenses and is therefore void under the Due Process Clause.

Decisions of lower federal courts are not binding on this Court. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004), cert den 543 US 870 (2004). More important, *Mosley* was not a due-process case involving analysis of MCL 750.81d under *Schad*. Nor did *Mosley* suggest—and certainly *Schad* does not provide—that categorization of offenses for federal sentencing purposes controls the constitutionality of the Legislature's designation of acts as alternate means of committing a single offense for purposes of conviction.

Further, after *Mosley*, we decided *People v Morris*, 314 Mich App 399, 411; 886 NW2d 910 (2016), in which we held that MCL 750.81d. was not constitutionally overbroad[6] because all the listed means of violating the statute required "physical interference or the threat of physical interference." We acknowledged the Sixth Circuit's holding in *Mosley* but noted that, "for our purposes, it is enough to say that obstructing an officer through a 'knowing failure to comply with a lawful command' requires some physical refusal to comply with a command, as opposed to a mere verbal statement of disagreement." *Morris*, 314 Mich App at 409 n 6.

Thus, although defendant asserts that there is a clear moral disparity between violent and nonviolent acts of resistance, this argument ignores the similarities between the alternate methods of violating MCL 750.81d, and it misapprehends the purpose of the statute and the larger statutory scheme. As explained in *Morris*, the Legislature has grouped together alternate means of resisting and obstructing arrest that similarly amount to physical interference or threatened physical interference with an officer's performance of his or her duties. *Morris*, 314 Mich App at 407-412. Even if "not everyone would agree" that the alternatives set forth in the statute are morally equivalent, it is clear that such equivalence could reasonably be found. *Schad*, 501 US at 643. Similarly, defendant has not shown that obstruction of a police officer could *never* be considered the moral equivalent of the more violent behaviors set forth in MCL 750.81d. See *id*. at 643-644 ("The proper critical question is not whether premeditated murder is necessarily the moral equivalent of felony murder in all possible instances of the latter"; "[t]he question, rather, is whether felony murder may *ever* be treated as the equivalent of murder by deliberation . . . ") (emphasis added). See also *Johnson*, ___ Mich App at ___; slip op at 2 (To succeed on a facial challenge, "[t]he fact that the . . . [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient.") (quotation marks and citation omitted). The primary purpose of the statute is to protect police officers from harm, a purpose that is rationally and reasonably served by criminalizing alternate acts that could encompass both violent and nonviolent resistance given the potential for even nonviolent resistance to necessitate a physical response by, and thus a

---

potential risk of physical injury to another." *Mosley*, 575 F3d at 605 (quotation marks and citations omitted).

[6] The defendant in *Morris* argued that "MCL 750.81d(1) is facially overbroad because nothing in the statute limits how an individual can be said to have 'resisted,' 'obstructed,' or 'opposed' a police officer, and so it is possible that asking simple questions of an officer could be construed as criminal." *Morris*, 314 Mich App at 405.

risk of harm to, the police. See *People v Vasquez*, 465 Mich 83, 94-98; 631 NW2d 711 (2001) (opinion by MARKMAN, J.).

Moreover, while defendant focuses solely on MCL 750.81d(1), when MCL 750.81d is considered as a whole, it is clear that the Legislature did not ignore different levels of blameworthiness or culpability, but in fact identified conduct that was more blameworthy and created a scheme for more harshly punishing more severe conduct. That is, while MCL 750.81d(1)-(4) each deal with situations in which an individual "assaults, batters, wounds, resists, obstructs, opposes, or endangers" an officer lawfully in performance of his or her duties, the penalty increases depending on whether the conduct causes "bodily injury requiring medical attention," MCL 750.81d(2); "a serious impairment of a body function," MCL 750.81d(3); or death, MCL 750.81d(4). In other words, to the extent MCL 750.81d(1) encompasses both violent and nonviolent conduct, it does so in the context of acts that cause no injury or, at most, harm less than bodily injury requiring medical treatment. Such a grouping of alternative means to a common end does not evince a clear moral disparity. Rather, the value choices inherent in defining the means to commit the offense were appropriately made in the first instance by the Legislature, see *Schad*, 501 US at 638, and the Legislature's choices in MCL 750.81d reasonably reflect notions of equivalent blameworthiness or culpability, see *id*. at 643.

Further, defendant ignores that prior to MCL 750.81d's enactment in 2002, Michigan has long defined resisting and obstructing to include the purported disparity about which defendant complains—namely, the potential to commit the offense by both violent and nonviolent means. See *People v King*, 236 Mich 405, 411-412; 210 NW 235 (1926) (rejecting argument that the defendants were "not guilty of resisting" simply "because they did not resort to physical violence"). Michigan's history and current practice is far from unique in defining resisting and obstructing to include violent and nonviolent acts. Indeed, precedent from numerous jurisdictions supports that resisting and obstructing a police officer can be committed with or without the use of violence. See generally 66 ALR 5th 397, § 2 (compiling cases and example of nonviolent acts amounting to resisting or obstructing arrest). Thus, under *Schad*, Michigan's history of defining resisting arrest to include both violent and nonviolent acts, and the current widespread practice of defining resisting arrest to encompass both violent and nonviolent acts, strongly supports the rationality and fundamental fairness of the Legislature's establishment of alternate means of violating MCL 750.81d that could encompass behavior that is both violent and nonviolent. See *Schad*, 501 US at 640-642.

On the whole, all the pertinent considerations identified in *Schad* demonstrates that MCL 750.81d(1) sets forth alternative means of committing a single offense rather than separate and distinct offenses. Because the Legislature did not exceed the constitutionally "permissible limits in defining criminal conduct," there was no constitutional violation in submitting the alternatives in MCL 750.81d to the jury as alternate means for committing a single offense. See *Schad*, 501 US at 631. Accordingly, defendant fails to carry his burden of showing that MCL 750.81d is facially unconstitutional.[7]

---

[7] In the course of his due-process argument, aside from his discussion of *Schad*, defendant briefly raises some tangential arguments regarding cases involving sentencing. Specifically, defendant

## B. UNANIMITY – ALTERNATE ACTS ESTABLISHING ACTUS REUS

Defendant also argues that, even if MCL 750.81d is not facially unconstitutional under *Schad*, it is unconstitutional as applied to him because the prosecution failed to present a single, coherent theory regarding how he violated the statute but instead argued and offered evidence to establish that he committed varied acts against different officers and thus violated MCL 750.81d in a variety of ways. According to defendant, this left the jury with "nearly infinite permutations" by which to find him guilty without agreeing as to which officers he specifically resisted or obstructed or how his conduct violated the statute. In these circumstances, defendant contends a specific unanimity instruction was warranted to ensure that the jury agreed on the factual bases for the offenses at issue.

As an initial matter, while defendant styles this argument as an as-applied challenge, the substance of his argument relates less to *Schad*, i.e., the constitutional bounds of the Legislature's ability to set forth alternative means of violating a statute, and more to whether the "the prosecution's proofs and arguments necessitated a specific unanimity instruction in this case . . . ." *Cooks*, 446 Mich at 514-515 & n 16. Accordingly, we will address defendant's argument that, under the facts of this case, a specific unanimity instruction was required. See *People v Latz*, 318 Mich App 380, 385; 898 NW2d 229 (2016) ("[C]ourts are not bound by the labels a party gives to an argument but rather by the substance of the argument.").

A defendant has a right to a unanimous verdict and a jury instruction on unanimity. *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). The trial court in this case provided the jury with a general instruction on unanimity. And "[u]nder most circumstances, a general instruction on the unanimity requirement will be adequate." *Id*. However, "if alternative acts allegedly committed by defendant are presented by the state as evidence of the actus reus element of the charged offense," a general unanimity instruction will not be adequate if "1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt." *Cooks*, 446 Mich at 524.

In defendant's case, he was charged with four counts under MCL 750.81d. The charges related to four incidents involving several different officers, which defendant now claims left the jury with endless factual permutations on which to find him guilty without requiring agreement as to what acts he committed. However, in actuality, the four counts related to four distinct incidents: (1) the events at the library, (2) the events inside Starbucks involving two officers, (3) the events outside Starbucks involving another officer, and (4) the events at Eastern Michigan University

---

cites *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), asserting that it stands for the proposition that a jury should unanimously determine all facts relevant to the extent of a defendant's punishment. However, *Apprendi*, is a sentencing case that did not involve any consideration of the due-process question under *Schad*. Moreover, *Schad*, in fact rejected similar sentencing-related arguments as irrelevant to the due-process question whether conviction under a multitheory statute was constitutionally permissible. See *Schad*, 501 US at 644 n 9. Thus, defendant's reliance on *Apprendi* is misplaced.

involving two officers. As to each count, the jury was instructed regarding the officer or officers related to that specific count. The jury was also specifically instructed that the counts were separate charges and that the jury must consider the crimes separately in light of the evidence. Specific evidence was also presented regarding defendant's conduct during each separate incident. There was, in other words, no risk of the jury confusing the separate incidents or being confused about the need to unanimously agree that defendant violated MCL 750.81d during each incident. Cf. *People v Bailey*, 310 Mich App 703, 719; 873 NW2d 855 (2015) (rejecting need for specific unanimity instruction in a case with multiple victims and multiple charges of criminal sexual conduct because there was "no risk" of juror confusion regarding "their obligation to unanimously find that defendant sexually penetrated each victim").

Recognizing that the jury was presented with the charges as clearly separate factual incidents, there is also no merit to defendant's argument regarding the need for a specific unanimity instruction because each individual count involved acts that were not materially distinct, conceptually or in terms of the proofs involved. See *Cooks*, 446 Mich at 524. For example, the first charge involved one officer and the incident at the library. Although defendant's conduct during the incident—e.g., struggling, spitting, attempting to flee, and pulling away from the officer—involved multiple acts, these multiple acts occurred during a single transaction with an officer, and the evidence regarding the acts—consisting of testimony and video—was materially identical. See *id*. at 522, 528. The analysis is the same with regard to the other incidents. Each incident involved multiple acts that could constitute a violation of MCL 750.81d(1), but these acts occurred in a short period of time, during a single transaction, and the evidence presented to establish the acts was materially identical.[8] On these facts, a specific unanimity instruction was not required. Defendant has not established plain error affecting his substantial rights from the trial court's failure to provide a specific unanimity instruction. See *People v Van Dorsten*, 441 Mich 540, 545; 494 NW2d 737 (1993).

Affirmed.

/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Jane M. Beckering

---

[8] Defendant emphasizes that the incident inside Starbucks and the incident at Eastern Michigan University each involved two police officers. But this fact alone does not necessarily require a specific unanimity instruction when, although there were two officers involved during each incident, "regardless of which officer each member of the jury had in mind, all 12 jurors determined that defendant had knowledge he was resisting or obstructing a police officer." *Morris*, 314 Mich App at 413 n 8. We note also that, while defendant now attempts to differentiate between the different officers, he did not present different defenses regarding the different officers at trial. See *Cooks*, 446 Mich at 523-524 & n 26.