# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PAUL PETER GROSS,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No. 318049
St. Clair Circuit Court
LC No. 13-000715-FH

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

A jury convicted defendant of operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), possession of methamphetamine, MCL 333.7403(2)(b)(i), resisting or obstructing a police officer, MCL 750.81d(1), carrying a concealed weapon, MCL 750.227, possession of a firearm during the commission of a felony, MCL 750.227b, and felon in possession of a firearm, MCL 750.224f. The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to concurrent prison terms of 15 to 30 years each for the operating or maintaining a methamphetamine laboratory and possession of methamphetamine convictions, 3 years and 10 months to 15 years for the resisting or obstructing conviction, 4 years and 10 months to 30 years each for the carrying a concealed weapon and felon-in-possession convictions, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant now appeals as of right. For the reasons explained in this opinion, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

While conducting surveillance, a police officer observed defendant with his girlfriend, Teresa Monzo, at the home of Lucas Bartley. Defendant left the home carrying two bags, a black bag and a blue and black backpack, and placed them in a Pontiac Sunfire, which had been borrowed from defendant's friend, Maria Wlodarczyk. Monzo carried a black drawstring bag into the car and entered the driver's seat, with defendant in the front passenger seat and Bartley in the rear passenger seat. The police requested that a uniformed officer conduct a traffic stop of the vehicle. After a police cruiser activated its lights to conduct a stop, the vehicle initially slowed, but then sped up and attempted to flee, resulting in a 34-mile high speed police pursuit. Monzo testified that defendant directed her not to stop, and directed her where to drive during the chase. During the chase, items were thrown from the vehicle. In particular, Monzo testified that defendant threw a gun from the vehicle. Monzo admitted purchasing the gun, but she

-1-

testified that she bought it for defendant because he could not legally purchase a weapon. The pursuit ended when Monzo lost control of the vehicle and struck a curb, damaging a tire in the process. After the vehicle stopped, defendant ran from the vehicle, but was apprehended after a struggle with the police. A gun was later recovered along the route of the police chase.

The police found equipment and ingredients necessary to make methamphetamine inside the bags that defendant placed in the vehicle. One of those bags also contained mail addressed to defendant and a prescription bottle with defendant's name on it. Additionally, evidence of methamphetamine manufacturing was found in Bartley's bedroom. Wlodarczyk, Monzo, and Bartley all testified that defendant produced methamphetamine for their consumption. Monzo admitted that she assisted defendant in the methamphetamine production by purchasing pseudoephedrine, crushing the pills, holding hoses, and cleaning the equipment. Monzo acknowledged at trial that she pled guilty to reduced charges pursuant to a plea agreement that required her to testify against defendant. Monzo admitted that she gave several prior police statements that were inconsistent with her trial testimony, but she claimed at trial that those prior statements were not truthful. Monzo also identified several letters purportedly written by defendant to her in which he acknowledged his involvement in the charged crimes. A jury convicted defendant as noted above, and defendant now appeals as of right.

## II. ADMISSION OF LETTERS

Defendant first argues that the trial court abused its discretion by admitting the letters that Monzo testified were written by defendant. Defendant argues that the letters were not timely produced, that they were not authenticated as having been written by defendant, and that the trial court unfairly allowed only selected portions of the letters to be introduced, in violation of the rule of completeness.

## A. DISCOVERY

Defendant first complains that the letters were not timely produced during discovery. A trial court's decision regarding discovery matters is reviewed for an abuse of discretion. *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). Under MCR 6.201, upon request, a prosecuting attorney is required to disclose any documents or other papers that the prosecutor may introduce at trial, MCR 6.201(A)(6), as well as any written statements made by a defendant, MCR 6.201(B)(3). Parties having a continuing duty to disclose, meaning that "[i]f at any time a party discovers additional information or material subject to disclosure . . . the party, without further request, must promptly notify the other party." MCR 6.201(H). If a party fails to comply with the discovery rules, the trial court has discretion regarding the appropriate sanction to impose, which may include the exclusion of the evidence or testimony. See MCR 6.201(J). When determining the appropriate remedy, "the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002).

In this case, the record discloses that the letters were first given to the prosecutor by Monzo's defense attorney during defendant's trial and that the prosecutor promptly provided copies to defendant on the same day. Because the prosecutor did not possess the letters before

trial, and promptly disclosed them when they were received, there was no discovery violation. Further, although defendant complains that he was prejudiced by the untimely production because he did not have notice of the letters before trial, defendant wrote the letters and as such defendant cannot claim that he was unaware of or unfairly surprised by the evidence. See *People v Taylor*, 159 Mich App 468, 487-488; 406 NW2d 859 (1987). Consequently, the trial court did not abuse its discretion by failing to exclude the letters under MCR 6.201(J).

## B. AUTHENTICATION

Defendant next argues that the letters were never properly authenticated. "While a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, a preliminary or underlying issue of law regarding the admissibility of the evidence, such as whether a rule of evidence bars admission, is reviewed de novo." *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013). "The decision whether a letter has been properly authenticated for admission into evidence is a matter within the sound discretion of the trial court." *People v Ford*, 262 Mich App 443, 460; 687 NW2d 119 (2004). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

MRE 901 governs the requirement of authentication as a condition precedent to the admission of evidence. In relevant part, MRE 901 states:

> **(a) General Provision**. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> **(b) Illustrations**. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> (1) *Testimony of Witness With Knowledge*. Testimony that a matter is what it is claimed to be.
>
> * * *
>
> (4) *Distinctive Characteristics and the Like*. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

Regarding the application of MRE 901, in *McDade*, 301 Mich App at 352-353, this Court explained:

> An example of authentication or identification that conforms to the requirements of MRE 901(a) is "[t]estimony that a matter is what it is claimed to be." MRE 901(b)(1). "It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility." *People v Berkey*, 437 Mich 40, 52;

467 NW2d 6 (1991). Further, "a trial court may consider *any* evidence regardless of that evidence's admissibility at trial, as long as the evidence is not privileged, in determining whether the evidence proffered for admission at trial is admissible." *People v Barrett*, 480 Mich 125, 134; 747 NW2d 797 (2008). [Emphasis in original.]

In the present case, 87 pages worth of letters were sent to Monzo, defendant's girlfriend, through third parties. The letters were unsigned and Monzo admitted that she was not familiar with defendant's handwriting. But, Monzo testified that she identified defendant as the letters' author based on the letters' contents. For example, Monzo stated that the letters contained information that was known only to defendant, including specific intimate details about their relationship. Cf. *Ford*, 262 Mich App at 461. The letters also contained references to the writer's familiarity with details of the charged offenses, such as Monzo's role as the getaway driver and Bartley's participation. Further, the letters contained references to circumstances that applied to defendant's situation, such as his status as an inmate and an upcoming preliminary examination, and the letters identified defendant's attorney by name, referring to him as "my" attorney. The letters also acknowledged that the writer, as an inmate, could not pass letters to other inmates such as Monzo, and therefore described passing letters through cellmates and others. The contents of the letters, viewed in conjunction with the surrounding circumstances, were sufficient to support a finding that the letters were authored by defendant, as the prosecutor claimed. This was sufficient to satisfy the requirement of authentication under MRE 901 and, contrary to defendant's arguments on appeal, the prosecution was not required to subject the letters to fingerprint testing, handwriting analysis, or DNA testing. Further, the fact that the letters included some information that might have been known to third parties, and that Monzo admitted that the letters contained some references that were unfamiliar to her, did not compel exclusion of the letters because evidence need not be free from weakness or doubt to be admissible. *McDade*, 301 Mich App at 352. The trial court did not abuse its discretion in determining that the letters were properly authenticated under MRE 901 for admission into evidence.

## C. RULE OF COMPLETENESS

Defendant also argues that the trial court violated the doctrine of completeness by introducing only selective portions of the letters, and not allowing him to introduce other portions to provide proper context for the admitted portions. Relevant to defendant's claim, the "rule of completeness" is contained in MRE 106, which states:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

MRE 106 allows a defendant to supplement the prosecution's proofs with additional writings which in fairness ought to be considered; but this rule does not have any bearing on the admissibility of the evidence introduced by the prosecutor. *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002). Thus, the rule is only pertinent "if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced." *Id.*

In this case, the record does not support defendant's contention that he was denied an opportunity to introduce additional portions of the letters beyond those portions relied on by the prosecutor. On the contrary, the record discloses that the prosecutor initially offered substantially redacted portions of the letters, limited to those portions "that were relevant to prove our point." Defense counsel complained that what was being offered was "17 pages of basically – a 17 page confession." Counsel requested that the entire letters be admitted under MRE 106, so that the jury could see the statements in context. The prosecutor stated that she had no objection to the introduction of the letters in their entirety. The trial court agreed to admit the letters in their entirety, stating: "I'll leave it up to the Defense. It will be your choice. Either the redacted version or the whole version." The prosecutor subsequently pointed out that several letters contained references to penalty, defendant's imprisonment, and defendant's parole status, matters that generally should not be disclosed to a jury. The trial court agreed that it was not necessary or appropriate to present that information to the jury and stated, "we won't let the jury see them until both of you have had a chance to go over them together and redact anything of that nature." Defendant did not object to the prosecutor's request to redact the letters to remove information referring to penalty or to defendant's criminal history. Ultimately, the prosecutor introduced a redacted version without references to penalty or defendant's past criminal history.

In sum, the record discloses that the trial court gave defendant the option of admitting the letters in their entirety or going with a redacted version. The version introduced at trial was redacted to exclude portions referring to penalty or to defendant's prior imprisonment or parole—information that defendant did not argue was necessary for the jury to hear in order to properly consider the remaining portions in context. Indeed, these portions were omitted because of their potential prejudicial effect on defendant and "the 'doctrine of completeness' is inapposite where the omitted portions . . . would have been more harmful than helpful to the defense." *People v Hoffman*, 205 Mich App 1, 15; 518 NW2d 817 (1994). Thus, there is no merit to defendant's argument that the rule of completeness was violated. Further, given the prejudicial information contained within the portions of the letters which were excluded, as well as the other evidence of defendant's guilt offered at trial, upon examination of the entire cause, it does not appear more probable than not that any potential error was outcome determinative. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). Defendant is not entitled to relief on this basis.

### III. ADMISSION OF PRIOR RECORDED STATEMENT

Defendant next argues that the trial court erred by denying his request to play Monzo's March 3, 2013 recorded police interview to impeach her trial testimony. In particular, the police interviewed Monzo several times, and it was not until her interview on June 6, 2013 that Monzo gave police a statement consistent with her trial testimony. She admitted in her trial testimony that she lied to police during her previous interviews, including on March 3, 2013, and defendant now argues that he should have been able to play the entirety of the March 3, 2013 interview for the jury.

Relevant to defendant's appellate arguments, the record indicates that before Monzo testified, defendant expressed an intent to introduce portions of Monzo's prior recorded police interviews, if necessary to impeach her trial testimony. Defense counsel expressly indicated that he only wanted to introduce the portions that were inconsistent with Monzo's trial testimony. At

that time, defense counsel opposed the prosecutor's request to admit the recorded interviews in their entirety. The trial court ruled in favor of defendant, concluding that only excerpts of the interviews, those portions that were inconsistent with Monzo's trial testimony and any surrounding statements necessary to demonstrate context, would be admitted. Despite this ruling, defendant later sought to admit Monzo's entire statement from March 3, 2013, but was unable to articulate a cogent reason why it was necessary to admit the entire statement. Consequently, the trial court denied the request, but allowed counsel to cross-examine Monzo about her prior statement to determine the scope and necessity of any impeachment evidence. Specifically, at trial, the issue of contention between the parties on this issue appeared to be that, during redirect examination, Monzo testified that, during the March 3, 2013 interview, she "put the gun in defendant's hand."[1] During re-cross examination, however, defense counsel successfully clarified this statement. That is, upon questioning by defense counsel, Monzo acknowledged that, on March 3, 2013 she did not tell police that defendant was in possession of the gun during the February 27, 2013 car chase, she denied that the gun was in her purse that day, and she did not tell police the gun had been thrown from the car. Considering Monzo's testimony, we conclude that the trial court did not abuse its discretion by denying defendant's request to play Monzo's police interview for the jury.

"Under MRE 613, subject to certain restrictions, a witness may be examined concerning a prior inconsistent statement for impeachment purposes." *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002). MRE 613 provides:

> **(a) Examining Witness Concerning Prior Statement.** In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

> **(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness.** Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

To impeach a witness with prior inconsistent statements under MRE 613, a party must first lay a proper foundation "by questioning the witness concerning the time and place of the statement

---

[1] In particular, in reference to the March 3, 2013 interview, while attempting to rehabilitate Monzo's credibility, the prosecutor asked Monzo during redirect: "Isn't it true that prior to June 6th of 2013, that you actually did put the gun in Defendant's hand?" Monzo responded in the affirmative. Out of the presence of the jury, the prosecutor later explained that, during an incident unrelated to the car chase, defendant took the gun from Monzo's purse and threatened to kill himself. Monzo apparently referred to this incident when she "put the gun in defendant's hand" during the March 3, 2013 police interview.

and the person to whom it was allegedly made." *Rodriguez*, 251 Mich App at 34. "When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic evidence of that statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995); *People v Claybon*, 124 Mich App 385, 399; 335 NW2d 493 (1983).

In this case, defendant sought to admit Monzo's entire March 3, 2013 recorded statement without first laying the proper foundation by establishing that Monzo could not recall making a prior inconsistent statement. Therefore, the trial court correctly instructed defense counsel to first ask Monzo appropriate questions to determine whether impeachment through the presentation of extrinsic evidence was necessary. After asking Monzo additional questions, and eliciting Monzo's admission that her police statement on March 3, 2013 was inconsistent with her trial testimony, defense counsel did not further request or argue that admission of the entire March 3 recorded interview was necessary. Indeed, given that Monzo admitted her prior inconsistent statements, proof of these statements through extrinsic evidence under MRE 613(b) was unnecessary, *People v Graves*, 15 Mich App 244, 246; 166 NW2d 480 (1968), and accordingly, we find no error.[2] Moreover, even assuming that defendant was entitled to admit the prior recorded interview to demonstrate an inconsistency with Monzo's trial testimony or to provide context for her testimony, it is not more probable than not that the error affected the outcome of the trial because defendant was able to elicit Monzo's admission at trial that she gave prior inconsistent statements in her prior interview. Therefore, any error was harmless. *People v Benton*, 294 Mich App 191, 199, 201-202; 817 NW2d 599 (2011).

## V. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor engaged in misconduct by attempting to introduce testimony that defendant accompanied Monzo when she attempted to purchase a gun, and that Monzo appeared to be purchasing the gun on behalf of defendant. The store clerk who sold the gun to Monzo testified that Monzo was with a male companion, but the clerk was unable to identify the male companion. The clerk testified that he thought that Monzo was purchasing the gun for the male companion because it seemed from the way the companion looked and acted that he was not capable of purchasing a firearm. Defense counsel objected, and the trial court sustained defendant's objection to the clerk's impressions as speculative, struck the testimony, and instructed the jury not to consider it.

---

[2] As a related matter, there is also no merit to defendant's argument that the trial court's refusal to admit the prior recorded interviews violated his right of confrontation, his right to present a defense, and his right to due process and a fair trial. The trial court did not deny defendant the opportunity to confront Monzo and did not deny him the opportunity to impeach Monzo with her prior inconsistent statements. Rather, the trial court's exclusion of Monzo's prior recorded interview related to the manner of impeachment. The court permitted defense counsel to question Monzo about her prior recorded statements, and counsel was successful in eliciting Monzo's admission that her prior statements were indeed inconsistent with her trial testimony. In short, defendant was not denied the opportunity to present a defense, he had every opportunity for confrontation, and he was not denied due process or a fair trial.

Even though defendant was successful in having the testimony excluded and stricken from the record, defendant now argues that the prosecutor engaged in misconduct by attempting to introduce the testimony, which was determined to be inadmissible. Although defendant successfully objected to the testimony at trial, he did not argue that the attempted introduction of the testimony constituted prosecutorial misconduct. "[A]n objection on one ground is insufficient to preserve an appellate argument based on a different ground." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Therefore, defendant's claim of prosecutorial misconduct is not preserved, and we review this issue for plain error affecting substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

Claims of prosecutorial misconduct are examined on a case-by-case basis, and the prosecutor's conduct must be examined in context in light of the entire record. *Id.* A prosecutor's good-faith attempt to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Thus, a prosecutor does not act in bad faith if evidence is arguably admissible. *Dobek*, 274 Mich App at 70.

In this case, the prosecutor's theory at trial was that Monzo purchased the firearm for defendant. The store clerk's testimony indicated that another man was with Monzo when she attempted to purchase the firearm. Although the clerk could not identify defendant as that man, Monzo later testified that it was defendant who was with her at the store and, more significantly, testified that she purchased the gun for defendant. In light of this record, the prosecutor had a good-faith basis for attempting to elicit the store clerk's testimony that, based on the clerk's personal observations of Monzo and the man in the store, Monzo appeared to be purchasing the firearm for her male companion, defendant. See MRE 701. Although the trial court ultimately excluded the testimony as speculative, the mere fact that the evidence was excluded does not render the prosecutor's conduct improper. Because the prosecutor had a good-faith basis for attempting to introduce the evidence, there was no misconduct. Furthermore, because the trial court ultimately excluded the testimony, struck it from the record, and instructed the jury not to consider it, defendant was not prejudiced. Jurors are presumed to follow their instructions, and instructions presumably cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The trial court's exclusion of the evidence and order striking it from the record and directing the jury not to consider it was sufficient to cure any prejudice, and protected defendant's right to a fair trial.

## V. POLICE REPORT OF A WEAPON IN THE VEHICLE

Defendant next argues that the trial court erred in allowing Officer Jeremy Young to testify that he notified other officers who attempted to stop defendant's vehicle that he had reason to believe that there was a gun inside the vehicle. Defendant argues that this testimony violated a pretrial ruling, was irrelevant, involved inadmissible hearsay, and was unduly prejudicial. We reject each of these arguments.

-8-

Before trial, defendant brought a motion in limine to exclude evidence that defendant was under investigation for an unrelated offense involving an assault with a firearm. Pursuant to the parties' stipulation, the trial court entered a pretrial order that provided:

> IT IS FURTHER ORDERED THAT testimony concerning Defendant threatening police officers, possibly possessing a firearm and/or being investigated for another criminal complaint will not be admitted by Plaintiff[] in its case in chief unless and until Defendant opens the door[.]

At trial, Monzo testified that there was a gun in the vehicle and that she purchased it for defendant. Additionally, defense counsel questioned the manner in which defendant was arrested. Police testimony indicated that defendant would not show his hands to officers, and that hand strikes occurred to force defendant to open his hands for officer safety. Defense counsel disputed that account of arrest by asking questions about the arresting officers' size which suggested that the police may have somehow overreacted or employed excessive force. After this testimony, Officer Young testified that before the police pursuit began, he advised the other officers that he had reason to believe there was a gun in the vehicle. He explained that he conveyed that information for purposes of officer safety.

Initially, we reject defendant's argument that Officer Young's testimony was not relevant or should have been excluded because it was unduly prejudicial. Generally, all relevant evidence is admissible. *Yost*, 278 Mich App at 355. Irrelevant evidence is inadmissible. MRE 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence is admissible if it sheds light on any material point in issue. *People v Murphy (On Remand)*, 282 Mich App 571, 580; 766 NW2d 303 (2009). Even if relevant, evidence may be excluded if the probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. See also *Benton*, 294 Mich App at 200.

Officer Young's testimony was relevant to explain the manner in which the police pursuit and arrest of defendant were handled. Defense counsel had questioned the manner in which defendant was arrested and suggested that the police overreacted. Police testimony indicated that defendant would not show his hands, and that hand strikes occurred to force defendant to open his hands for officer safety. The testimony that the officers had been advised that there was reason to believe that a gun was inside the vehicle was relevant to show that the officers had a legitimate concern for officer safety. Further, the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice, particularly considering that Monzo had already testified that a gun was inside the vehicle.

In addition, by questioning whether the officers acted appropriately when arresting defendant, defendant opened the door to evidence explaining the officers' conduct, including evidence that the officers had been warned of the possible presence of a gun. Therefore, the

testimony did not violate the trial court's pretrial order, and the admission of this testimony did not deprive defendant of due process or a fair trial.[3] Lastly, the testimony was not hearsay because it was not introduced for its truth (i.e., to prove that defendant possessed a gun), but rather to show its effect on the other officers' conduct. See *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007) ("[A] statement offered to show why police officers acted as they did is not hearsay."). For these reasons, the trial court did not abuse its discretion in allowing Officer Young's testimony.

## VI. EVIDENCE OF MONZO'S METHAMPHETAMINE MANUFACTURE

Defendant next argues that the trial court abused its discretion and demonstrated its partiality by allowing the prosecutor to introduce testimony of defendant's involvement in methamphetamine production, but not allowing him to present similar testimony from Wlodarczyk to demonstrate that Monzo was also involved in manufacturing methamphetamine. In particular, the trial court permitted Wlodarczyk to testify that she witnessed defendant's manufacture of methamphetamine, but sustained the prosecutor's relevancy objection when defense counsel attempted to question her about Monzo's involvement in the manufacture of methamphetamine.

When the trial court's ruling excludes evidence, it is incumbent on the party seeking admission to make an offer of proof, and error may not be predicated on the exclusion of evidence unless a substantial right of the party is affected. MRE 103(a)(2); *People v Witherspoon*, 257 Mich App 329, 331; 670 NW2d 434 (2003). The trial court excluded Wlodarczyk's testimony on relevancy grounds. Defendant failed to articulate the relevance of Wlodarczyk's testimony in the trial court and, on appeal, he similarly fails to explain the relevance of this testimony. Instead, defendant suggests on appeal that the trial court's exclusion of this testimony was simply unfair, and reflected the trial court's partiality, where the prosecution was allowed to present evidence of defendant's involvement in the manufacture of methamphetamine. We disagree. The trial court permitted questions regarding defendant's production of methamphetamine because evidence of defendant's involvement in manufacturing methamphetamine was relevant to show defendant's knowing possession of equipment or chemicals used for manufacturing methamphetamine, a necessary element of the controlled substance charges. See generally MRE 404(b). That purpose was not applicable to Monzo, because she was not on trial. Because defendant failed to establish a relevant purpose for Wlodarczyk's testimony, the trial court did not abuse its discretion by excluding it. The trial

---

[3] Insofar as defendant's argument regarding Officer Young's testimony involves a claim that the prosecutor committed misconduct by unfairly attempting to taint the evidence, we can discern no misconduct in the prosecutor's good faith attempt to admit relevant evidence. See *Noble*, 238 Mich App at 660-661. Given that defendant opened the door to the appropriateness of the police offices' conduct, the prosecutor did not violate the trial court's order by questioning Officer Young regarding the presence of a gun and defendant cannot now complain that the prosecutor pursued this line of questioning. See *People v Horn*, 279 Mich App 31, 35; 755 NW2d 212 (2008).

court's principled evidentiary ruling in this regard, grounded in the evidence and the law, does not demonstrate partiality or bias by the trial court. See *People v Jackson*, 292 Mich App 583, 598-599; 808 NW2d 541 (2011).

Moreover, any error in excluding the testimony was clearly harmless because Monzo testified at trial and admitted that she participated in the manufacture of methamphetamine by crushing the pseudoephedrine pills, handling the hoses, and cleaning the hoses and utensils. The prosecutor also elicited testimony that Monzo was familiar with the process because she testified regarding the ingredients that created a horrible odor and how liquid was poured out of the two-liter bottle into another vessel. In light of Monzo's testimony and other evidence showing her participation in manufacturing methamphetamine, it is not more probable than not that the exclusion of Wlodarczyk's cumulative testimony affected the outcome of the trial. See *Lukity*, 460 Mich at 496.

## VII. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his convictions. In particular, regarding his firearm convictions, defendant contends that, although a gun was thrown from the vehicle, the police officers could not specifically tie the gun to defendant. Similarly, regarding defendant's drug related convictions, defendant maintains that, while materials for the production of methamphetamine were discovered in the vehicle, there is no evidence linking defendant to the items in question. Related to his conviction for resisting and obstructing a police officer, defendant argues he in no way resisted the police, but rather he merely ran from the vehicle and fell in the snow. More generally, defendant challenges Monzo's credibility in light of her inconsistent statements and the plea bargain she received, and he debates the significance of the evidence presented at trial, including, for example, his letters to Monzo and the testimony of Wlodarczyk and Bartley.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). In examining a sufficiency challenge, the evidence is reviewed in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Circumstantial evidence and reasonable inferences arising from that evidence may constitute proof of the elements of the crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). It is for the trier of fact to determine what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences. *Malone*, 287 Mich App at 654. Further, this Court will not interfere with the jury's assessment of the weight of evidence or the credibility of witnesses. *Dunigan*, 299 Mich App at 582.

Defendant argues that, regarding his drug related convictions, there was insufficient evidence to establish his possession of the methamphetamine and methamphetamine chemicals and equipment because there was no credible testimony or physical evidence, such as his fingerprints, linking those items to him. Possession of methamphetamine requires a showing of dominion or right to exercise control over the drug with knowledge of its presence and character. *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005). For purposes of operating or maintaining a methamphetamine laboratory, a person shall not own, possess, or use a vehicle,

building, structure or area for use as a location to manufacture methamphetamine or, alternatively, a person shall not own or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for purposes of manufacturing methamphetamine. See *id*. at 623-624; MCL 333.7401c(1)(a), (b). Regarding the element of possession, in *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992), the Court explained:

> A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, possession may be found even when the defendant is not the owner of the recovered narcotics. Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance. [Internal citations omitted.]

Actual possession occurs when an individual exercises direct physical control over a thing at a given time. *People v Flick*, 487 Mich 1, 15; 790 NW2d 295 (2010). Even if an individual does not have actual possession, a person nonetheless constructively possesses a thing if he knowingly has the power and intention at a given time to exercise dominion or control over it through direct acts or through the acts of another. *Id*. at 14-15. "Constructive possession of an illegal substance requires proof that the defendant knew of its character." *People v McGhee*, 268 Mich App 600, 610; 709 NW2d 595 (2005). In contrast, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *People v Bylsma*, 493 Mich 17, 31-32; 825 NW2d 543 (2012) (quotation marks and footnote omitted). "Rather, the essential inquiry into possession is whether there is a sufficient nexus between the defendant and the contraband including whether the defendant exercised a dominion and control over the substance." *Id*. (quotation marks and footnote omitted). The possession determination must be examined in light of the totality of the circumstances. *Wolfe*, 440 Mich at 521.

In the present case, Monzo, Bartley, and Wlodarczyk all testified regarding their use of methamphetamine made by defendant and their roles in purchasing pseudoephedrine for defendant to make the methamphetamine. For example, according to Monzo and Bartley, on the day of the car chase, defendant cooked methamphetamine in Bartley's bedroom. They then used methamphetamine in the car during the police pursuit. Although defendant argues that these witnesses were not credible, the credibility of their testimony was for the jury to resolve, and this Court will not resolve it anew. *Dunigan*, 299 Mich App at 582. Moreover, in addition to their testimony, defendant was observed carrying two bags from Bartley's home to the Sunfire, and those bags contained items used to manufacture methamphetamine. One bag also contained a letter and prescription bottle bearing defendant's name, thereby further linking defendant to the contents of that bag. Defendant also fled from the police, from which the jury could infer a consciousness of guilt. *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008). In addition, the prosecution introduced several letters written by defendant to Monzo, which contained statements demonstrating defendant's role in the crimes, including his possession and manufacture of methamphetamine and the laboratory equipment. Accordingly, the evidence was sufficient to support defendant's convictions for the methamphetamine offenses.

Both felon-in-possession of a firearm and felony-firearm require proof that the defendant possessed a firearm.[4] *People v Peals*, 476 Mich 636, 640; 720 NW2d 196 (2006). The crime of carrying a concealed weapon requires actual or constructive possession coupled with the concealment requirement. *People v Czerwinski*, 99 Mich App 304, 306-307; 298 NW2d 16 (1980). Relevant to these firearm related offenses, Monzo testified that she purchased a firearm for defendant, that defendant would carry the gun in his waistband or that, when they were together, Monzo would carry it for him in her purse, and that defendant threw the firearm out the window during the police chase. A police officer testified that he saw objects thrown from the passenger side window during the police pursuit, and a firearm was later recovered along the route of the police chase. The serial number on that gun matched the serial number on a gun box recovered by police. Contrary to defendant's appellate arguments, this evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant possessed and carried a firearm after Monzo purchased it, and that he possessed it during the commission of the methamphetamine offenses. Again, the credibility of Monzo's testimony was for the jury to resolve.

To support a conviction for resisting or obstructing a police officer pursuant to MCL 750.81d(1), the prosecutor must demonstrate that (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties, and (3) that the officer's actions were lawful. *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014); *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014). Physical obstruction of an officer is unnecessary; hindering an officer in the process of a criminal investigation is sufficient. *People Pohl*, 207 Mich App 332, 333; 523 NW2d 634 (1994). For example, prearrest flight that actively interferes with an investigation is sufficient. *Id*. Further, physical contact or violence with the police is unnecessary, and the failure to abide by police warnings or orders is just as effective in resisting officers as if physical force was used. *People v King*, 236 Mich 405, 411-412; 210 NW 235 (1926).

Monzo testified that she advised defendant that the vehicle was being pulled over, but he persuaded her to flee from the police, resulting in a high-speed, 34-mile chase. When the vehicle eventually stopped, defendant then fled from the police on foot. Although Deputy Daman Duva could not specifically recall if he identified himself as a police officer when defendant fled from the Sunfire, he was dressed in a police uniform and he repeatedly ordered defendant to "stop."

---

[4] For purposes of felony-firearm, the prosecution also must show that the firearm was carried or possessed during the commission or attempted commission of another felony. *People v Duncan*, 462 Mich 47, 49 n 3; 610 NW2d 551 (2000). To prove felon in possession, the prosecutor was required to show that defendant possessed or used a firearm, that defendant was a convicted felon, and his right to possess a firearm had not yet been restored. MCL 750.224f. On appeal, defendant argues only that he did not possess the gun recovered in this case. In any event, it is clear that the possession of the gun in this case occurred during the commission of another felony, and that, given defendant's stipulation at trial, he was ineligible to possess a firearm.

Further, the flight on foot was preceded by a lengthy police pursuit during which officers had activated their lights and sirens. Moreover, Officer Ed Gerrow testified that he identified himself as a police officer and ordered defendant to stop, but defendant did not stop. This evidence was sufficient to establish that defendant resisted or obstructed a police officer in the lawful performance of his duty.[5]

## VIII.  MOTION TO QUASH

Defendant also argues that no probable cause existed to support his bind over and that the circuit court erred by denying his motion to quash. Given our conclusion that sufficient evidence was presented to support defendant's convictions, we need not consider whether there was any error in the district court's bind-over decision. *People v Bosca*, __ Mich App __, __; __ NW2d __ (2015), slip op at 21. That is, even if a magistrate's decision to bind over is erroneous, the error is harmless when sufficient evidence is presented to convict at trial. *Bennett*, 290 Mich App at 481. As discussed, having reviewed the record, we conclude that the prosecution presented sufficient evidence at trial to convict defendant of the charged offenses. Accordingly, any potential error with the bind over was harmless and this issue need not be considered further.

## VIII.  SENTENCING

Finally, defendant argues that resentencing is required because the trial court erred in scoring prior record variables (PRV) 2 and 4, and offense variables (OV) 14 and 19.[6] Defendant preserved these scoring challenges by raising them in a motion for resentencing. MCL 769.34(10); *People v Needham*, 299 Mich App 251, 253; 829 NW2d 329 (2013). On appeal, the trial court's factual findings are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court's application of the facts to the statutory scoring conditions presents a question of law, which we review de novo. *Id*. In this case, upon review, we conclude that the trial court properly scored the variables in question and thus defendant is not entitled to resentencing.

PRV 2 addresses prior low severity felony convictions. The court is directed to score 30 points if the offender has four or more prior low severity felony convictions, whereas 20 points

---

[5] Having determined that the evidence was sufficient to support defendants' convictions, we also reject defendant's cursory assertion that the trial court erred in denying his motion for a directed verdict. See *People v Toodle*, 155 Mich App 539, 551; 400 NW2d 670 (1986).

[6] Aside from his specific challenges to the scoring of these variables, defendant requests remand for correction of the PSIR and resentencing because he maintains that many of his misdemeanor convictions may have been obtained without counsel. Contrary to defendant's arguments, we see no inaccuracy in the PSIR that needs correcting. Defendant's convictions listed in the PSIR either affirmatively report the presence of counsel, or they list the presence of counsel as "unknown." We fail to see how this can be construed as inaccurate. Further, defendant concedes on appeal that these offenses did not affect the sentencing guidelines and, consequently, resentencing is not required on this basis.

-14-

are to be scored if the offender has three prior low severity felony convictions. MCL 777.52(1)(a) and (b). For purposes of PRV, a "prior low severity felony conviction" refers to a conviction for any of the following, provided that the conviction was entered before the sentencing offense was committed:

> (a) A crime listed in offense class E, F, G, or H.
>
> (b) A felony under a law of the United States or another state that corresponds to a crime listed in offense class E, F, G, or H.
>
> (c) A felony that is not listed in offense class M2, A, B, C, D, E, F, G, or H and that is punishable by a maximum term of imprisonment of less than 10 years.
>
> (d) A felony under a law of the United States or another state that does not correspond to a crime listed in offense class M2, A, B, C, D, E, F, G, or H and that is punishable by a maximum term of imprisonment of less than 10 years. [MCL 777.52(2).]

Defendant argues that his prior convictions for resisting or obstructing a police officer, one conviction dating from 1997 and several from 2000, should not have been considered in the scoring of PRV 2 because the crimes were classified as misdemeanors at the time they were committed. See MCL 750.479, as enacted by 1931 PA 328. Defendant asserts that if these convictions are not scored, he is left with only three prior low severity felony convictions, thereby warranting a score of only 20 points, rather than 30 points, for PRV 2. In making his argument, defendant concedes, however, that, although these crimes were classified as a "misdemeanor" in the Penal Code before 2002, they were nonetheless punishable by two years' imprisonment. See MCL 750.479, as enacted by 1931 PA 328. For purposes of the Code of Criminal Procedure, which includes the sentencing guidelines, the labels of "felony" or "misdemeanor" in the Penal Code do not necessarily govern. See *People v Smith*, 423 Mich 427, 439, 443-445; 378 NW2d 384 (1985). Rather, the Code of Criminal Procedure defines a "felony" as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by death or by *imprisonment for more than 1 year* or an offense expressly designated by law to be a felony." MCL 761.1(g) (emphasis added). Given this definition of "felony," it follows that a two-year offense labeled as a "misdemeanor" under the Penal Code nonetheless falls within the definition of "felony" for purposes of the Code of Criminal Procedure. See *Smith*, 423 Mich at 439, 443-445. Consequently, for purposes of PRV 2, defendant's convictions for resisting and obstructing a police officer were felonies punishable by a maximum of less than 10 years.[7] See MCL 777.52(2)(c). As such, the trial court properly counted these offenses as prior low severity felony convictions and, because defendant had more

---

[7] Alternatively, with regards to defendant's convictions for resisting and obstructing in 2000, with the enactment of 1998 PA 317, the Legislature specifically designated resisting and obstructing a peace officer in violation of MCL 750.479 as a class G offense, meaning defendant's convictions in 2000 would constitute crimes listed in offense class G. See MCL 777.52(2)(a). In either case, these offenses were properly scored as prior low severity felonies.

-15-

than four such felonies, the trial court properly scored 30 points under PRV 2. MCL 777.52(1)(a).

PRV 4 addresses prior low severity juvenile adjudications, and provides that five points shall be scored for two prior low severity juvenile adjudications. MCL 777.54(1)(d). Defendant's presentence report lists two juvenile adjudications. Defendant does not dispute the adjudications, but argues that they should not have been considered because the presentence report indicates that it is unknown whether he was represented by counsel. As defendant observes, convictions and juvenile adjudications obtained in violation of the right to counsel may not be used to enhance a criminal sentence. *People v Alexander (After Remand)*, 207 Mich App 227, 229-230; 523 NW2d 653 (1994). See also *People v Carpentier*, 446 Mich 19; 521 NW2d 195 (1994). Once a defendant presents prima facie proof that a prior conviction was obtained without the benefit of counsel, the burden shifts to the prosecution to establish the validity of the prior conviction, e.g., affirmative record evidence of a waiver of counsel. *Carpentier*, 446 Mich at 31; *People v Moore*, 391 Mich 426, 441; 216 NW2d 770 (1974).

In this case, in response to defendant's motion for resentencing, the prosecutor submitted orders of disposition from defendant's juvenile cases that indicate that defendant appeared in court with his parents and waived an attorney. We agree with the trial court that this evidence established the waiver of counsel and the validity of defendant's juvenile adjudications. Because the prosecutor presented affirmative record evidence that defendant waived counsel, the trial court did not err in upholding the five-point score for PRV 4.[8]

Defendant next challenges his 10-point score for OV 14, which addresses the offender's role in the crime. The court is directed to assess 10 points if the offender was a leader in a multiple offender situation. MCL 777.44(1)(a). The court must examine the entire criminal transaction to determine if the defendant was a leader. MCL 777.44(2)(a). In this case, Bartley and Monzo both identified defendant as the primary manufacturer of the methamphetamine. According to Monzo, she purchased the gun at defendant's behest, and she intended to stop when the police attempted to pull over their vehicle, but defendant commanded her not to stop and thereafter directed her driving. Given the testimony presented, the trial court did not clearly err in finding that a preponderance of the evidence established defendant's role as the leader. Thus, the trial court properly scored 10 points for OV 14.

---

[8] Related to PRV 4, defendant also argues that his juvenile conviction for joyriding, i.e., unlawful use of an automobile, should not have been counted as a low severity juvenile adjudication because the offense was a misdemeanor. Defendant's PSIR states, however, that the final charge was a class E adjudication for unlawful use of an automobile, and a class E crime constitutes a low severity adjudication for purposes of PRV 4. See MCL 777.54(2)(a). In any event, as defendant acknowledges, joyriding is punishable by up to two years imprisonment, MCL 750.414, and as such it constitutes a "felony" for purposes of the Code of Criminal Procedure, and was thus properly scored according to MCL 777.54(2)(c). See MCL 761.1(g); *Smith*, 423 Mich at 439, 443-445.

Lastly, OV 19 addresses interference with the administration of justice, and 10 points are to be scored if the offender "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "The phrase 'interfered with or attempted to interfere with the administration of justice' is broad," and it includes acts constituting obstruction of justice although it is not limited to those acts. *People v Steele*, 283 Mich App 472, 492; 769 NW2d 256 (2009). Fleeing from the police contrary to an order to stop can constitute interference with the administration of justice and is sufficient to support a 10-point score for OV 19. See *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013); *People v Ratcliff*, 299 Mich App 625, 633; 831 NW2d 474 (2013), vacated on other grounds 495 Mich 876 (2013). Because the evidence in this case showed that defendant directed Monzo to keep driving, despite the police sirens and lights, and that he then attempted to flee from the police after a 34-mile police pursuit while ignoring police commands to stop, the trial court appropriately scored 10 points for OV 19. Cf. *Ratcliff*, 299 Mich App at 633.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio